**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No.:

The Garrett Constr. Co., LLC; Eric Garrett; and Evan Brown,

 Plaintiffs,

v.

ECS, LLC, f/k/a Eagle Contracting Services,

 Defendant.

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

  Plaintiffs, The Garrett Constr. Co., LLC; Eric Garrett; and Evan Brown, by and through their counsel, Burg Simpson Eldredge Hersh & Jardine, P.C., submit their complaint for declaratory and injunctive relief against ECS, LLC, as follows:

**PARTIES**

  1. Plaintiff The Garrett Constr. Co., LLC ("Garrett"), is an Indiana limited liability company authorized to do business in Colorado and with its principal place of business located at 1051 Greenwood Springs Blvd., Ste. 101, Greenwood, IN 46143.

  2. Plaintiff Eric Garrett is the chief executive officer of Garrett and a resident of Tennessee.

  3. Plaintiff Evan Brown is the chief financial officer of Garrett and a resident of Indiana.

  4. Defendant ECS, LLC ("ECS"), is a Texas limited liability company with its principal place of business located at 100 W. Big Beaver Road, Ste. 200, Troy, MI 48084.

  5. The Colorado Secretary of State has declared ECS a delinquent entity pursuant to § 7-90-902, C.R.S., since January 1, 2022.

## JURISDICTION AND VENUE

**A.    This Court has subject matter jurisdiction.**

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a); this dispute involves citizens of different states and concerns an amount in controversy in excess of $75,000.00, exclusive of interest and costs.

7.    Upon information and belief, the member(s) of ECS are citizens of Michigan. ECS' owner is Kurt Rillema, who is presently incarcerated in Michigan but prior to his incarceration resided in Michigan.

8.    Garrett is a citizen of Tennessee, where its lone member resides.

9.    Courts in the Tenth Circuit follow the "'either viewpoint rule' which considers either the value to the plaintiff or the cost to defendant of injunctive and declaratory relief as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum."[1]

10.    The Declaratory Judgment Act permits this Court to declare the rights and other legal relations of any interested party seeking such declaration.[2]

11.    Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.[3]

12.    This matter seeks a declaration from this Court that ECS has waived its right to demand arbitration and to enjoin an arbitration from moving forward in which ECS claims damages in excess of $5 million. Accordingly, the amount in controversy requirement is met.

---

[1] *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006); *see also Travelers Commer. Ins. Co. v. Hernandez*, Civil Action No. 24-cv-01282-PAB, 2024 U.S. Dist. LEXIS 89653, 2024 WL 2245173, at *2 (D. Colo. May 17, 2024).
[2] 28 U.S.C. § 2201.
[3] 28 U.S.C. § 2202.

**B.     This Court has personal jurisdiction over ECS.**

13.    This Court has specific personal jurisdiction over ECS because ECS has targeted this forum state with its activities, including by filing its arbitration demand concerning more than a dozen construction projects located in Colorado. Of the projects at issue in the arbitration demand, all but three were in Colorado. Moreover, ECS filed three lawsuits in state district courts in Colorado concerning projects at issue in the arbitration demand.

**C.     Venue is proper in this Court.**

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2); a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this district.

## GENERAL ALLEGATIONS

**A.     Garrett and ECS enter into interrelated contracts.**

15.    Garrett subcontracted with ECS to perform HVAC work on 20 projects across four states; 15 projects in Colorado, two projects in Florida, two projects in Arizona, and one project in Minnesota.

16.    Eric Garrett is not a party to any of the subcontract agreements between the parties.

17.    Evan Brown is not a party to any of the subcontract agreements between the parties.

18.    For each of the projects, the subcontract agreement was substantially the same; scope and price terms were the only differences.

19.    The subcontract agreements contain an arbitration clause that states disputes are to be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.

20. The Federal Arbitration Act ("FAA") applies per the terms of the subcontract agreements.

21. The subcontract agreements contain a set-off provision that states any "sums payable to [ECS] shall be subject to all claims and defenses of [Garrett] or any of its affiliated companies, whether arising from this or any other Project or transactions, and [Garrett] may set-off and deduct such amounts."

22. The set-off provision in favor of Garrett makes the subcontracts interrelated because they represent a network of agreements between sophisticated parties that addressed related duties and rights.

**B.**   **ECS affirmatively waives the ability to resolve claims through arbitration.**

23. Garrett filed a lawsuit in Minnesota state court, case no. 19HA-CV-24-3384, on July 31, 2024, seeking damages related to ECS' breaches of a subcontract agreement in connection with a construction project in Minnesota.

24. ECS did not seek to enforce the arbitration provision and instead filed responsive pleadings and participated in the state court litigation.

25. Moreover, ECS then filed a lawsuit in Minnesota state court, case no. 19HA-CV-24-4369, on September 19, 2024, related to the same construction project over which Garrett filed suit in July 2024.

26. In its filing in Minnesota, ECS affirmatively alleged that the state court was the appropriate jurisdiction to resolve the claims.

27. Garrett's lawsuit and ECS' lawsuit were consolidated into a single action (the "Minnesota Litigation").

28. On February 28, 2025, ECS filed a lawsuit in the El Paso County, Colorado district court, case no. 2025CV30459, against Garrett related to a subcontract agreement for the "Caliber at Briargate" project.

29. In the Caliber at Briargate lawsuit, ECS affirmatively pleaded that the El Paso County district court was the appropriate jurisdiction to resolve the claims.

30. On April 10, 2025, Garrett filed an answer to ECS' complaint and asserted counterclaims.

31. On February 28, 2025, ECS filed a lawsuit in the El Paso County, Colorado district court, case no. 2025CV30457, against Garrett related to a subcontract agreement for the "Echelon Ridge" project.

32. In the Echelon Ridge lawsuit, ECS affirmatively pleaded that the El Paso County district court was the appropriate jurisdiction to resolve the claims.

33. On April 10, 2025, Garrett filed an answer to ECS' complaint and asserted counterclaims.

34. On February 28, 2025, ECS filed a lawsuit in the El Paso County, Colorado district court, case no. 2025CV30459, against Garrett related to a subcontract agreement for the "Caliber at Briargate" project.

35. In the Caliber at Briargate lawsuit, ECS affirmatively pleaded that the El Paso County district court was the appropriate jurisdiction to resolve the claims.

36. On April 10, 2025, Garrett filed an answer to ECS' complaint and asserted counterclaims.

37. On February 28, 2025, ECS filed a lawsuit in the Adams County, Colorado district court, case no. 2025CV030302, against Garrett related to a subcontract agreement for the "Caliber at The Grove" project.

38. In the Caliber at The Grove lawsuit, ECS affirmatively pleaded that the Adams County district court was the appropriate jurisdiction to resolve the claims.

39. On April 10, 2025, Garrett filed an answer to ECS' complaint and asserted counterclaims.

### C. ECS serves a demand for arbitration despite previously filing and participating in lawsuits in state courts over the same subject matter and includes individuals not parties to the subcontract agreements.

40. On March 24, 2025, ECS initiated an arbitration proceeding through the American Arbitration Association, case no. 01-25-0001-5233 (the "Arbitration Action").

41. The demand for arbitration was not served upon Garrett until April 7, 2025.

42. The demand for arbitration names Eric Garrett and Evan Brown as parties despite them not being parties to any of the subcontract agreements.

43. The demand for arbitration claims entitlement to more than $5 million in damages in connection with 16 of the 20 construction projects for which Garrett and ECS entered into subcontract agreements in Arizona, Colorado, and Florida.

44. Included among the projects in the arbitration demand are all three of the Colorado projects that are the subject of state court lawsuits ECS filed in February.

## CLAIMS FOR RELIEF

### First Claim for Relief:
### Declaratory relief that ECS has waived ability to demand arbitration
### (by Garrett against ECS)

45. Plaintiffs incorporate the foregoing allegations as if restated verbatim herein.

46. There is an actual controversy between the parties as to whether ECS may demand arbitration under the subcontract agreements when it has initiated litigation in state courts under certain of those subcontract agreements.

47. The right to arbitration, like any other contract right, can be waived.[4]

48. By initiating and substantively participating in state court litigation concerning projects for which the subcontract agreements apply, ECS has acted inconsistently with the right to arbitrate.

---

[4] *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 772 (10th Cir. 2010).

49. ECS did and continues to substantively participate in the Minnesota litigation, including by participating in discovery and invoking state procedural rules.

50. ECS did and continues to substantively participate in the three lawsuits it initiated in state court in Colorado; ECS filed the lawsuits, served the lawsuits on Garrett and the various property owners, conferred with Garrett's counsel, and agreed to extensions of time for responsive pleadings, and has at all times maintained the Colorado litigation as moving forward.

51. Moreover, ECS affirmatively alleged in each of the three Colorado lawsuits that the respective state district courts had jurisdiction and were the proper venues.

52. This is not a case in which a defendant in a lawsuit is seeking to exercise a right to arbitration after a delay; rather this case involves a plaintiff in a state lawsuit who affirmatively chose that venue and is now seeking to initiate a new arbitration proceeding concerning the same subject matter.

53. The Minnesota and Colorado litigation concern, *inter alia*, Garrett's ability to set off from payments owed to ECS damages or losses Garrett sustained on other projects.

54. ECS has affirmatively put at issue in the Minnesota and Colorado litigation all subcontract agreements because they are all interrelated.

55. By pursuing claims in state courts, ECS misled Garrett into believing it desired to resolve disputes through the state courts.

56. Accordingly, the Court should declare pursuant to 28 U.S.C. § 2201 that ECS waived its ability to demand arbitration under the subcontract agreements and enjoin the arbitration proceeding from moving forward.

**Second Claim for Relief:**
**(Alternatively) Declaratory relief that ECS has waived ability to demand arbitration with respect to previously filed lawsuits**
**(by Garrett against ECS)**

57. Plaintiffs incorporate the foregoing allegations as if restated verbatim herein.

58. There is an actual controversy between the parties as to whether ECS may demand arbitration under the subcontract agreements when it has initiated litigation in state courts under certain of those subcontract agreements.

59. The right to arbitration, like any other contract right, can be waived.[5]

60. By initiating and substantively participating in state court litigation concerning projects for which the subcontract agreements apply, ECS has acted inconsistently with the right to arbitrate.

61. ECS did and continues to substantively participate in the Minnesota litigation, including by participating in discovery and invoking state procedural rules.

62. ECS did and continues to substantively participate in the three lawsuits it initiated in state court in Colorado; ECS filed the lawsuits, served the lawsuits on Garrett and the various property owners, conferred with Garrett's counsel, and agreed to extensions of time for responsive pleadings, and has at all times maintained the Colorado litigation as moving forward.

63. Moreover, ECS affirmatively alleged in each of the three Colorado lawsuits that the respective state district courts had jurisdiction and were the proper venues.

64. This is not a case in which a defendant in a lawsuit is seeking to exercise a right to arbitration after a delay; rather this case involves a plaintiff in a state lawsuit who affirmatively chose that venue and is now seeking to initiate a new arbitration proceeding concerning the same subject matter.

---

[5] *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 772 (10th Cir. 2010).

65. By pursuing claims in state courts, ECS misled Garrett into believing it desired to resolve disputes through the state courts.

66. Accordingly, the Court should declare pursuant to 28 U.S.C. § 2201 that ECS waived its ability to demand arbitration with respect to the subcontract agreements that are the subject of the Minnesota and Colorado litigation and enjoin the arbitration proceeding from moving forward as to those subcontract agreements.

**Third Claim for Relief:**
**Declaratory Relief that ECS has no ability to compel Eric Garrett to participate in Arbitration**
**(by Eric Garrett against ECS)**

67. Plaintiffs incorporate the foregoing allegations as if restated verbatim herein.

68. There is an actual controversy between the parties as to whether ECS may demand to arbitrate claims against Eric Garrett under the subcontract agreements.

69. Eric Garrett is not a party to the subcontract agreements.

70. The only parties to the subcontract agreements are The Garrett Constr. Co., LLC and ECS, LLC.

71. Eric Garrett has never personally sought to enforce any of the subcontract agreements.

72. Eric Garrett is not a party to any contract with ECS.

73. Eric Garrett has not consented to arbitrate any claims.

74. Under Colorado law, arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.[6] No exception applies to this case.

---

[6] *Seeley Int'l Pty LTD v. Maisotsenko*, Civil Action No. 21-cv-01350-CMA-KLM, 2022 U.S. Dist. LEXIS 241594, at *2 (D. Colo. Feb. 22, 2022)

75. Under Arizona law, the general rule is that an arbitration agreement is binding only on parties to the agreement.[7] No exception applies to this case.

76. Under Florida law, a party who has not agreed to be bound by an arbitration agreement cannot generally be compelled to arbitrate.[8] No exception applies to this case.

77. Accordingly, the Court should declare pursuant to 28 U.S.C. § 2201 that ECS has no ability to demand that Eric Garrett arbitrate claims and enjoin the arbitration proceeding from moving forward.

### Fourth Claim for Relief:
### Declaratory Relief that ECS has no ability to compel Evan Brown to participate in arbitration
### (by Evan Brown against ECS)

78. Plaintiffs incorporate the foregoing allegations as if restated verbatim herein.

79. There is an actual controversy between the parties as to whether ECS may demand to arbitrate claims against Evan Brown under the subcontract agreements.

80. Evan Brown is not a party to the subcontract agreements.

81. The only parties to the subcontract agreements are The Garrett Constr. Co., LLC and ECS, LLC.

82. Evan Brown has never personally sought to enforce any of the subcontract agreements.

83. Evan Brown is not a party to any contract with ECS.

84. Evan Brown has not consented to arbitrate any claims.

---

[7] *Austin v. Austin*, 348 P.3d 897, 904 (Ariz. App. 2015).
[8] *Taylor Grp., Inc. v. Indus. Distribs. Int'l Co.*, 859 F. App'x 439 (11th Cir. 2021).

85.     Under Colorado law, arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.[9] No exception applies to this case.

86.     Under Arizona law, the general rule is that an arbitration agreement is binding only on parties to the agreement.[10] No exception applies to this case.

87.     Under Florida law, a party who has not agreed to be bound by an arbitration agreement cannot generally be compelled to arbitrate.[11] No exception applies to this case.

88.     Accordingly, the Court should declare pursuant to 28 U.S.C. § 2201 that ECS has no ability to demand that Evan Brown arbitrate claims and enjoin the arbitration proceeding from moving forward.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs The Garrett Constr. Co., LLC; Eric Garrett; and Evan Brown, respectfully request that the Court enter judgment in their favor and grant the following relief:

a.      a declaration that ECS has waived any ability to demand arbitration in connection with the subcontract agreements;

b.      a preliminary and permanent injunction enjoining the Arbitration Action from moving forward because ECS waived its ability to demand arbitration;

c.      alternatively, a declaration that ECS has waived any ability to demand arbitration in connection with the subcontract agreements for which there is already active litigation in state courts, including the Minnesota and Colorado litigation;

---

[9] *Seeley Int'l Pty LTD v. Maisotsenko*, Civil Action No. 21-cv-01350-CMA-KLM, 2022 U.S. Dist. LEXIS 241594, at *2 (D. Colo. Feb. 22, 2022)
[10] *Austin v. Austin*, 348 P.3d 897, 904 (Ariz. App. 2015).
[11] *Taylor Grp., Inc. v. Indus. Distribs. Int'l Co.*, 859 F. App'x 439 (11th Cir. 2021).

      d.      a preliminary and permanent injunction enjoining the Arbitration Action from moving forward with respect to claims in connection with the subcontract agreements that are the subject of state court litigation, including the Minnesota and Colorado litigation;

      e.      a declaration that ECS has no ability to assert claims against or compel participation of Eric Garrett in the Arbitration Action;

      f.      a preliminary and permanent injunction enjoining the Arbitration Action from moving forward as to Eric Garrett;

      g.      a declaration that ECS has no ability to assert claims against or compel participation of Evan Brown in the Arbitration Action;

      h.      a preliminary and permanent injunction enjoining the Arbitration Action from moving forward as to Evan Brown;

      i.      attorneys fees and costs as allowed by law; and

      j.      such furth relief that the Court deems just and proper.

Respectfully submitted April 15, 2025.

      */s/ Patrick M. Sweet*
David K. TeSelle, Reg. No. 29648
    dteselle@burgsimpson.com
Patrick M. Sweet, Reg. No. 51130
    psweet@burgsimpson.com
Burg Simpson Eldredge Hersh & Jardine, P.C.
40 Inverness Drive East
Englewood, CO 80112
Phone: (303) 792-5595
*Attorneys for Plaintiffs*